# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 20-CR-712-SRC ) |
| COURTNEY CURTIS, | ) ) |
| Defendant. | ) ) |

## DEFENDANT'S SENTENCING MEMORANDUM

*I. Introduction*

Defendant Courtney Curtis was a productive member of the Missouri legislature. He worked hard for his legislative district and became well-respected in his community.

Unfortunately, Courtney was not very good at managing his campaign funds. He crossed from gray areas of legality to illegality. The undersigned does not intend to try to put too fine of a point on Courtney's conduct. Courtney pleaded "guilty" to essentially treating his campaign funds as his own, so it would be ridiculous to try to make a silk purse out of a sow's ear. It simply is a shame that Courtney's tenure ended in this fashion.

*Gall v. United States* requires that before making any sort of final sentence the District Court must first make Guideline calculations to which neither side has objected. For sentencing purposes the only real issue is the application of *Gall* and 18 U.S.C. Code §3553.

For the reasons cited in this Sentencing Memorandum, Courtney will request a variance from his Advisory United States Sentencing Guideline range of 15-21 months to a sentence of 12 months consisting of 6 months of home confinement and 6 months of probation. As will be shown below, this sentence would meet all of the criteria of 18 U.S.C. Code §3553.

## II. *Gall v. United States*

The Sentencing Guidelines were enacted to ensure that "the crime fit the time." The goal was to reduce sentencing disparities. Over time though Circuit Court decisions slowly eroded a sentencing judge's ability to ensure that a particular Defendant is treated fairly. Relevant conduct was liberalized in such a way so that a first time non-violent drug offender could easily receive a 20 year sentence. Appellate decisions ensured that various enhancements were practically "automatic." Downward departures of practically any kind were frowned upon. Under that scenario, the best sentence Courtney could have hoped for was 15 months.

*Booker* began the slow and seemingly tedious return to a system where the sentencing judge could view the entirety of the circumstances and not rely solely on the Guidelines. A sentencing judge could now have true input into the sentence that was handed out.

The culmination of *Booker* is *Gall v. United States*, 128 S. Ct. 586; 169 L. Ed. 2d 445; 2007 U.S. LEXIS 13083; 76 U.S.L.W. 4009 (Dec. 2007) But for *Gall*, Courtney would be hamstrung to try and argue what he feels is an appropriate sentence. Once this Honorable Court determined what the mandatory U.S. Sentencing Guidelines were, realistically the sentencing would conclude.

The language in *Gall* is breathtaking. The Supreme Court held that a District Judge "may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." (p. 3) As will be shown below, a sentence of 12 months consisting of 6 months of home confinement and 6 months of probation is appropriate and meets all of the factors set out in 18 U.S.C. §3553.

### A. Courtney Curtis

The coronavirus pandemic as well as time constraints relevant to the undersigned's representation of Courtney have created a unique situation. It is a defense attorney's version of "speed dating." The compacted time frame has forced Courtney and the undersigned to develop a trust and understanding that ordinarily takes months to develop. Once the awkwardness of getting to know one another dissipated, the

undersigned and Courtney met regularly. As time went on, the undersigned came to appreciate and respect who Courtney Curtis the person is.

An unfortunate and unintended result in criminal cases is that the Judge sees the worst side of the Defendant. Here, a politician who stole from his campaign fund. Pre-*Gall* it was practically impossible to humanize a Defendant because once the Offense Level was decided, the sentencing concluded.

Courtney was never a "normal" politician though. His political baptism was during the cauldron of Ferguson. Courtney is someone who deeply believes that societal change is possible with the help of elected officials. Courtney ran for office, was elected and served his constituents admirably. Courtney allowed the rigors of his job to interfere with diligently keeping his campaign funds separate from his personal funds.

Paragraph 70 succinctly states the highs and lows of Courtney's tenure in the Missouri Legislature:

> "The defendant formerly served as a member of the Missouri House of Representatives for the 73rd district, which encompassed ten individual municipalities of north St. Louis County. In this position, the defendant earned an ending annual salary of $35,915, plus $119 per diem during periods when the legislature convened. Curtis initially won election in 2012 and reelection thereafter in 2014 and 2016; however, the defendant did not seek to retain his seat for 2019. According to various public sources, throughout his tenure, Curtis sponsored or co-sponsored a total of 148 bills, and served on ten different committees related to such matters as agri-business, international trade, education, social services appropriations and government overnight (verified). Some additional accolades earned by the defendant as a legislator include his appointment to president of the Freshman Democratic Caucus and chair of the Freshman Bipartisan Issues committee in 2013; and recognition as the Associated Students of the University of Missouri Legislator of the Year in 2013 (verified). In January 2015, Curtis introduced a controversial antiunion, "right-to-work" bill, which was met with strong opposition by his political party and eventually led to a physical altercation with one of his colleagues in January 2016 (verified). According to the defendant, he was thereafter informally blacklisted by the Missouri Democratic Party, who effectively blocked his attempt to file for a senate seat in early 2018. As a result of this controversy, Curtis resigned as a legislator on December 5, 2018. It was additionally through this position that the defendant misused $47,867.69 in

campaign contributions for his own personal benefit, which resulted in fines of $191,550 imposed by the Missouri Ethics Commission and later investigation into the instant offense."

Courtney pleaded guilty to and will be sentenced for the crimes he committed. It is counter-productive to try and explain his conduct. The undersigned will simply state that Courtney was an idealistic and unsophisticated politician who tried to do everything on his own.

Exhibit A is a letter from St. Louis NAACP President Adolphus Pruitt. It is one of the most eloquent, impactful letters in support of a client the undersigned has ever read. Mr. Pruitt describes the potential he saw in Courtney as well as the type of person Courtney is:

> "I had no problem introducing the representative to friends, associates, etc. as a caring public servant and I saw great potential. I was disappointed upon learning of his legal problems; to witness a young African-American public servant overcome the obstacles and successfully serve as Chairman of the Missouri House of Representative's Urban Issues Committee and paying careful attention to St. Louis's most underserved communities (including those outside his district) and to subsequently find himself before the courts reminded me of the plight of young African-American males in our country..."

> "I have witnessed first-hand Representative Curtis's ability to be a productive member of society and provide value to the social fabric of our community. And hopefully, given an opportunity to reestablish himself in society, Representative Curtis will reach the heights I envisioned for him; and pave a path for his contemporaries to follow."

> "Representative Curtis has an exceptional level of dedication and leadership ability. His work with local, state, and federal law enforcement and community leaders throughout his legislative career speaks to his demonstrated commitment to building stronger, safer communities through not only his public service, but also his civic involvement."

It would be foolish for the undersigned to try to add to the above. Mr. Pruitt beautifully describes all of the attributes that this Honorable Court should take into consideration when sentencing Courtney. Letters from former State Representative Maria Chappelle-Nadall (Exhibit B), former St. Louis County Council Hazel Erby

4

(Exhibit C), and County Councilwoman Rita Days describe the hectic pace that Courtney had to maintain as well as the passion he had for any job he undertook.

This is not a case where the blame is being shifted elsewhere or trying to minimize what Courtney has done. He is going to be sentenced for crimes he committed. It is hoped that his Guideline sentence will be 15-21 months. Fortunately, though in the post-*Gall* world *who* Courtney is can be taken into consideration so that this Honorable Court can sentence Courtney to probation. Courtney is someone who has accomplished a great deal in his personal life and hopefully he will not be defined by the conduct that led to his guilty plea in this case.

Courtney has let a lot of people down, especially his constituents. But, that should not take away from all of the positive things he did for his community while serving as its representative in the Missouri House.

### III.  18 U.S.C. 3553

At page 22, *Gall* lists and discusses the seven factors that a sentencing court *must* consider. The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." *18 U.S.C. § 3553(a)(1)*. It is the undersigned's position that this is a "draw."

The nature of the offense is pretty straightforward. Courtney knowingly spent campaign funds on personal items. He didn't try to hide this by creating dummy accounts or "invent" employees to pay. A way to describe Courtney's conduct is "ham handed."

The circumstances of the offense need to be judged equally with everything else. Courtney was a newly minted representative in the Missouri House. Courtney became a binge drinker to deal with stress because he was ill-prepared for the pace of his new job. More importantly, because Courtney did not come up in the normal way of politics, he didn't have a structure in place to ensure that his accounts were set up properly and that he followed the intricate campaign financing rules. Probably a combination of naivete, arrogance and stubbornness led him to ignore the basic tenent of public service---follow the rules.

5

The circumstances are not such that Courtney used the campaign funds to live a lavish lifestyle. The amount of campaign money Corey spent at the Casinos does not give rise to the notion that he had a gambling addiction and spent every waking second gambling. Lavish trips were not taken or expensive baubles purchased.

The history and characteristics of Courtney are trumpeted in the attached letters. A "cheat" is *not* going to get glowing letters of reference from politicians who are generally more concerned about themselves than others. Adolphus Pruitt is not someone who would write a glowing letter about Courtney unless he absolutely, positively believes in him.

The letters show just how much Courtney cares about his community. The letters show how Courtney wanted to make a difference in a lot of areas.

The second factor requires the consideration of the general purposes of sentencing, including:

> "the need for the sentence imposed --
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."
> *§3553(a)(2).*"

The undersigned has written numerous Sentencing Memorandums going through each of the foregoing sections in excruciating detail to show why his client deserves a particular sentence. The bottom line for any sentencing is to ensure that the Defendant has learned their lesson, won't break the law again and will return to being a productive member of society.

There was a time when the U.S. Sentencing Guidelines were mandatory that it was easy for a Sentencing Judge to go through each and every subparagraph of §3553(a)(2) and show why incarceration was the only way to achieve the goals of sentencing. The more evolved approach requires an analysis of each and every subparagraph of §3553(a)(2).

Subparagraph (D) is antiquated. It seems to presume that a prison sentence is required to provide a Defendant with certain "benefits" like educational or vocational training. It clashes with *Gall* which advocates an expansive approach to sentencing. Anything in subparagraph (D) can be done during a period of home confinement or probation. Courtney will never ever hold elected office again, so subparagraph (D) would not apply to him in a strict sense.

Protecting the public from further crimes of the Defendant assumes that there will be further crimes. Courtney is willing to be placed on as tight a leash as this Honorable Court deems just. Courtney was a respected citizen of Ferguson before the FBI began its investigation of him. His criminal record was practically non-existent. There came a point where Courtney's inability to differentiate his campaign funds with his personal funds got out of hand. Courtney is a convicted felon as a result of this. It is implausible to think that he has not learned his lesson.

Subsections (A) and (B) are the difficult hurdles to clear. Requesting what might be considered a "light" sentence seems to be contrary to just punishment and deterrence. The argument will go that if Courtney gets off easy, no message will be sent to other elected officials who might think of taking money from their campaign funds to spend on personal items. That point would be well-taken if Courtney were supporting some sort of a lavish lifestyle or in some way used the money for illegitimate purposes.

The carrot and stick analogy seems to fit. Each crime and Defendant have their own unique set of circumstances. A Defendant who constantly breaks the law and for whom prison is a home away from home needs the stick.

The question is how big does the "stick" need to be to ensure just punishment? How is it possible to quantify the fear that a former elected official has of going to prison? How is it possible to quantify the humiliation and degradation that Courtney's family has been caused as a result of his actions? How is it possible to quantify the stress and anxiety that Courtney has felt since the investigation began? Post-*Gall* these seemingly small matters figure into the just punishment and deterrence equation.

The third factor § 3553(a)(3) pertains to the kinds of sentences available and is a perfect seguey regarding just punishment and deterrence. In the federal criminal justice system it still seems that the presumption is that if an individual is charged with a crime, incarceration is mandatory. *Gall* discussed probation which to a casual observer is viewed as "getting off easy." The Defendant in *Gall* was given probation! *Gall* held:

> "We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See *United States v. Knights, 534 U.S. 112, 119, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001)* ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffin v. Wisconsin, 483 U.S. 868, 874, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987)*).
> 4 Probationers may not leave [*596] the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. *USSG § 5B1.3*. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize [***19] any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer. App. 109.
> 4  See also Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957) ("Probation is not granted out of a spirit of leniency…As the Wickersham Commission said, probation is not merely 'letting an offender off easily'"); 1 N. Cohen, The Law of Probation and Parole § 7:9 (2d ed. 1999) ("The probation or parole conditions imposed on an individual can have a significant impact on both that person and society…Often these conditions comprehensively regulate significant facets of their day-to-day lives…They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist")."

Incarceration is no longer mandated. It is wholly unfair to take the position that the ***only*** just punishment is imprisonment so as to act as a deterrence to other fraud or politician/Defendants. To follow this approach would violate the legislative history to Section 3553 (a) where a sentencing court should not show a preference for one purpose of sentencing over another.

8

The fourth and fifth elements discuss the Sentencing Guidelines and policy statements and have been discussed above.  Mr. Pruitt's letter puts a unique touch on the policy of sentencing as well as the kinds of sentences available.

Restorative Justice is a term used by Mr. Pruitt in describing what he hopes from this Honorable Court:

> "The need for Restorative Justice in this matter is warranted; we have an opportunity for an important policy proposition that focuses on sentencing decisions that support building a stronger relationship between the Justice System and the community is imperative. Instead of the taxpayers incurring cost for detention, putting Representative Curtis to work on tangible steps to work both with law enforcement and residents on activities that building trust that can have profound impacts for us all. At the same time, I firmly believe that he can best serve his time developing and taking the concrete action(s) needed build bridges between our Justice System and those who see it as inequitable (including work with the Ferguson Consent Decree), thus utilizing Representative Curtis's work to assist in leading the way to reforms.
>
> Your honor, I know you have seen situations like this before (young men with promise who find themselves before the bench); and the decision you make could have profound impacts far beyond Representative Curtis and his immediate family and friends. I am hopeful that what I've shared with you offers perspective and insights that support not leniency, but value-added for the sentencing process, and 'Restorative Justice' for our society as a whole. Thank you in advance for your consideration."

It is Kafkaesque that Courtney is now advocating personally that what he advocated for others.  One of Courtney's interests while a legislator was criminal justice reform and he tried to enact Restorative Justice type policies.  There is no doubt that Courtney has to be punished for his conduct.  The idea behind Restorative Justice is to focus on rehabilitation, which seems appropriate here.

3553(A)(6) deals with "the need to avoid unwarranted sentence disparities" which again is an antiquated notion, because no two cases are similar.  Trying to compare a client's case to another individual's is a dangerous game, because it is too easy for the Sentencing Judge or Assistant U.S. Attorney to point out the differences between each case.

9

The final element, "the need to provide restitution to any victim," which is something that will be dealt with by this Honorable Court's Judgement. Courtney will obviously do everything within his power to repay this money as soon as he can.

Preceding the 3553 list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second factor. It has been discussed above that a 12 month sentence consisting of 6 months of home confinement and 6 months of probation can be deemed a sentence which is not greater than necessary to comply with the purposes of sentencing.

### *IV. Conclusion*

This case has shredded Courtney's personal life. He is having difficulty dealing with the embarrassment he has caused himself as well as the specter of prison.

The undersigned has developed a great deal of respect and appreciation for Courtney even though their relationship has been of short duration.

Courtney is someone who has made a difference in the lives of those less fortunate in his community. He was "someone." Courtney is now a convicted felon who will have to work very, very, very hard to earn the trust, respect and admiration of his community.

For the foregoing reasons, Courtney Curtis requests a 12 month sentence consisting of 6 months of home confinement and 6 months of probation.

COURTNEY CURTIS

STOBBS LAW OFFICES

BY:
/s/John D. Stobbs II
John D. Stobbs II, No. 43052
E.D.Mo. Number 40623
Attorney for Defendant
307 Henry St. Suite 211
Alton, Illinois 62002
Telephone: (618)462-8484
FAX: (618)462-8585
Email: jds2@stobbslaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2021, a copy of the attached *Defendant's Sentencing Memorandum* was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

                Mr. Hal Goldsmith
                Assistant U.S. Attorney
                111 S. 10th Street
                St. Louis, Missouri 63102

                STOBBS LAW OFFICES

                /s/ John D. Stobbs II
                Attorney for Defendant
                307 Henry St. Suite 211
                Alton, Illinois 62002